## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**DANIEL R. DOTSON,**

     **Plaintiff,**

**v.**                                     **Case No: 5:22-cv-479-WFJ-PRL**

**RICKY DIXON,**

     **Defendant.**

_____

### ORDER

This matter comes before the Court on Daniel Dotson's ("Plaintiff") Motion for Summary Judgment (Dkt. 39). Ricky Dixon, Secretary of the Florida Department of Corrections ("Defendant" or the "FDC") filed a Response in Opposition (Dkt. 42). Defendant also filed a Motion for Summary Judgment (Dkt. 40), and Plaintiff filed a Response (Dkt. 43). After careful consideration, the Court denies Plaintiff's Motion for Summary Judgment in its entirety and only partially grants Defendant's Motion for Summary Judgment.

## BACKGROUND

### I.    Factual Background

Plaintiff is a prisoner in the custody of the Florida Department of Corrections ("FDC") serving a life sentence for sexual battery on a victim under 12 years of age and aggravated child abuse, and he is a Muslim. Plaintiff has been in the FDC since 2006 and converted to Islam in 2019. (Dkt. 11 at 19). Plaintiff has been housed in

"numerous faith-and-character-based dorms and [is] currently housed at an incentivized institution where [he] receive[s] extra privileges, [] pray[s] five times a day, attend[s] study classes and prayer services, read Islamic texts, don[s] a kufi, and keep[s] a prayer rug." *Id.* Plaintiff's faith requires him to grow and maintain a fist-length beard with a trimmed moustache. *Id.* at 13, 20. For him, not complying with this requirement is a punishable sin. *Id.* at 20.

On August 13, 2022, Plaintiff was forced to trim his beard. *Id.* at 18. That same day he filed an informal grievance stating that the grooming policy,[1] as applied to him, violated RLUIPA because it violated a tenet of his Muslim faith and requested an exemption to grow a fist-length beard with a trimmed moustache. *Id.* The informal grievance was denied on August 19, 2022, and Plaintiff was told he could grow a half-inch beard. *Id.*

On August 24, 2022, Plaintiff filed a formal grievance, seeking an "individualized, context-specific inquiry" into granting him an exemption from the grooming policy. (Dkt. 11 at 32). Plaintiff was advised that the response to the informal grievance appropriately addressed his grievance, and his appeal was denied. *Id.* at 30.

On September 6, 2022, Plaintiff filed an appeal to the Secretary, FDC, requesting an inquiry and an exemption to the grooming policy. (Dkt. 11 at 28). The

---

[1] Florida Administrative Code Chapter 33-602.101 sets out the FDC's grooming rules. The relevant part states, "All inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard." Fla. Admin. Code Ch. 33-602.101(4). That chapter of the code includes other rules that limit inmates' grooming options, but the Court will refer to the above-quoted sentence as the "grooming policy" throughout this Order.

answer agreed with the previous responses and denied the administrative appeal. *Id.* at 27.

## II.    Procedural Background

On November 23, 2022, Plaintiff filed his amended complaint against Defendant seeking a transfer to Tennessee or an order allowing him to grow and maintain at least a fist-length beard and a trimmed moustache. (Dkt. 11 at 25). This is a civil rights case based on the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–200cc-5. (Dkt. 11 at 13–14). He claims the FDC's grooming policy, which prohibits inmates from growing beards longer than half an inch, unlawfully interferes with his right to freely practice his religious beliefs.

Plaintiff has moved for summary judgment, stating, *inter alia*, that other Muslim inmates in FDC custody have sued and won the ability to grow a fist-length beard. (Dkt. 39). Defendant also filed a motion for summary judgment, arguing that the grooming policy is constitutional and that the FDC is using the least restrictive means to further its legitimate security interests. (Dkt. 40). Both parties have filed responses in opposition. (Dkts. 42, 43).

## LEGAL STANDARD

On a motion for summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)). As such, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (quoting *Celotex*, 477 U.S. at 324).

If the moving party discharges its burden, the nonmoving party must then identify specific facts showing that there is a genuine issue of material fact. *Id*. (citing Fed. R. Civ. P. 56 (e)). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party and a fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen*, 121 F.3d at 646 (quoting *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. Ultimately, summary judgment should be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

"Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in *Ernie Haire Ford, Inc.*, 541 F. Supp. 2d at 1297–98)).

## DISCUSSION

### I. Religious Land Use and Institutionalized Persons Act ("RLUIPA")

The RLUIPA allows prisoners to seek religious accommodations from prison officials:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Congress intended the RLUIPA's protection of religious liberty to be expansive. It defined "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Courts must construe the RLUIPA "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc-3(g). And the RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." § 2000cc-3(c).

## II. Merits of Plaintiff's RLUIPA Claim

Under the RLUIPA's burden-shifting framework, a plaintiff must show that (1) his relevant religious exercise is "grounded in a sincerely held religious belief" and (2) the challenged government policy "substantially burden[s] that exercise" by forcing the plaintiff "to 'engage in conduct that seriously violates [his] religious beliefs.'" *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014)). The burden then shifts to the government to show that its action or policy is (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that interest. *Id.* at 362. "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 574 U.S. at 364 (quoting *Hobby Lobby*, 573 U.S. at 728) (cleaned up).

The RLUIPA requires the Court to focus its inquiry on Plaintiff and his particular circumstances, rather than the general legality of the FDC's grooming policy. *Id.* at 362-63. To satisfy its burden, the FDC must "demonstrate that the compelling interest test is satisfied through application of the challenged law" to

6

Plaintiff. *Id.* at 363 (quoting *Hobby Lobby*, 573 U.S. at 725). The Court must scrutinize the asserted harm of granting a specific exemption to Plaintiff and "look to the marginal interest in enforcing" the FDC's grooming rule in this particular context. *Id.*

Defendant does not dispute that Plaintiff's sincerely held religious belief requires him to maintain a fist length beard or that the grooming policy substantially burdens Plaintiff's exercise of that belief. (*See* Dkt. 40 at 15–16). Rather, Defendant claims he is entitled to summary judgment because the grooming policy is the least restrictive means of furthering compelling governmental interests. Plaintiff does not contest that the grooming policy furthers compelling interests. (*See* Dkt. 39 at 5). Thus, the critical question is whether applying the grooming policy to prevent Plaintiff from maintaining a fist-length beard is the least restrictive means of furthering compelling government interests.

### a.  *No Genuine Dispute Over the FDC's Compelling Interests*

Most of Defendant's motion broadly defends the grooming policy and speculates about future problems if the FDC allowed thousands of other Muslim inmates, and thousands of members of other faith groups, to grow fist length beards.

Defendant identifies three governmental interests served by the grooming policy. First, the policy serves security and safety interest because inmates can use fist-length beards to hide contraband, such as handcuff keys, razor blades, drugs, and cellphone SIM cards, and can shave a beard after an escape to quickly change their identities to avoid apprehension. (Dkt. 40 at 18). *But see Sims v. Inch*, 400 F. Supp. 3d 1272, 1276 (N.D. Fla. 2019) ("Contraband has sometimes been hidden in a beard, but

7

the [FDC] has exaggerated the risk."). As it pertains to Plaintiff, the FDC states he is "serving a life sentence for a sexually violent crime" at an incentivized facility.[2] (Dkt. 40 at 17). While Defendant states that "Plaintiff's record is comparable to the record of the inmate in" *Smith v. Owens*, 848 F.3d 975, 980 (11th Cir. 2017), the FDC offers no support to that claim beyond that they are both serving life sentences. *Id.*[3]

Second, the grooming policy serves hygiene and health interests. A grooming policy compliant beard "promotes good hygiene by prohibiting inmates from growing untrimmed beards that they refuse to wash or comb regularly and that develop strong odors (which strategy could be used by inmates in an attempt to dissuade corrections officers from coming close to the inmate to conduct a search)." (Dkt. 40 at 4–5). Defendant does not present any argument specific to Plaintiff regarding this factor.

Third, the FDC has an interest in conserving its limited resources. Carl Kirkland, Jr., Deputy Director of Institutional Operations, presents an estimate of

---

[2] Plaintiff states, that "in order for an inmate to be considered for housing at the incentivized prison, he must show, over a set period of time that he desires to stay out of trouble. And then, once he is housed at an incentivized camp, he must maintain diciplinary [sic] free, status, remain D.R. free." (Dkt. 43 at 2).

[3] This claim also appears to be demonstrably false. In *Smith v. Owens*, the inmate:

> is serving a life sentence in a close security prison for murder and armed robbery, among other offenses. He has an extensive disciplinary record and has been found guilty of assaulting correctional officers and other inmates; threatening correctional officers; possessing weapons, cell phones, and contraband; and disobeying the GDOC's grooming policy.

*Smith*, 13 F.4th at 1329.

> Here, Plaintiff is housed in an incentivized prison, not a close security prison. (Dkt. 40-2 at 4–5) Further, Defendant makes no claims that Plaintiff has violated any prison regulation. In fact, Plaintiff's claim that he has "been a near-model inmate" is unrefuted. (Dkt. 11 at 20).

expenses the FDC might incur if it allows inmates with religious exemptions to grow fist-length beards. He appears to claim that if Plaintiff is granted an exemption, then inmates of multiple faith groups will seek and be granted exemptions too.[4] Based on that assumption, he predicts it would cost more than $10 million in the first year to provide adequate staff and materials to safely conduct searches of these fist-length beards. (Dkt. 40-2 at 7–10). The FDC's estimate assumes 6,500 inmates would be allowed to grow fist-length beards, and it accounts for increased man hours to search beards and equipment like metal detectors and disposable hair picks. *Id*.

However, Defendant's claim that granting Plaintiff an exemption to grow a longer beard would eventually lead to 6,500 fist-length beards and more than $10 million in annual costs is "far too speculative to be the basis of summary judgment." *Shabazz v. Dixon*, No. 2:17-CV-648-JES-NPM, 2022 WL 1015818, at *4 (M.D. Fla. Apr. 5, 2022) ("The argument that granting [the plaintiff] an exception from the grooming policy would lead to 5,000 untrimmed beard and more than $8 million in annual costs is far too speculative to be the basis of summary judgment."); *see also Knight v. Thompson*, 797 F.3d 934, 945 (11th Cir. 2015) ("[T]he court need not defer to speculative or exaggerated fears or after-the-fact rationalizations.").

Plaintiff counters Defendant's claims by referring to a decision out of the

---

[4] Kirkland states that as of October 16, 2023, 6,532 inmates had declared their religion as Muslim, and 5,002 inmates identified as Jewish. (Dkt. 40-2 at 7). The Muslim inmates "are likely to seek a religious exemption" if Plaintiff is granted one and the Jewish inmates "may seek religious exemptions to grow fist length beards." *Id*. Kirkland claims that members of other faith groups, such as Native Americans, Rastafarians, and Hebrew Israelites, will likely seek religious exemptions from the grooming policy. (Dkt. 40 at 8).

Northern District of Florida, *Sims v. Inch*, 400 F. Supp. 3d. 1272 (N.D. Fla. 2019). (Dkt. 39 at 2.)  In *Sims*, a Muslim inmate was granted an exemption from the FDC's grooming policy following a bench trial. *Sims*, 400 F. Supp. 3d. at 1280. However, to the extent Plaintiff is attempting to use the factual findings in *Sims* to support his motion for summary judgment, this Court rejects such a use as improper. The federal rules on summary judgment are clear that the motion must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . admissions, [or] interrogatory answers. . . ." Fed. R. Civ. P. 56(c)(1)(A). Citing the factual findings from a different case does not comply with Rule 56(c) and will not be considered.

In sum, prison security is paramount, and an inmate's ability to conceal items that could be used either as a weapon or means of escape is of great safety and fiscal concern for the FDC. (Dkt. 40 at 18). *See Holt*, 135 S. Ct. at 859 (stating that the Court did "not question the importance of the Department's interests in stopping the flow of contraband and facilitating prisoner identification"); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) (prison security is compelling state interest) (cited in *Tanksley v. Litscher*, 723 F. App'x 370, 372 (7th Cir. 2018); *Linehan v. Crosby*, 346 F. App'x 471, 473 (11th Cir. 2009) (finding that the "DOC has a compelling governmental interest in keeping costs down and preventing security risks."). Indeed, even Plaintiff's motion for summary judgment concedes that the FDC has shown it has compelling interests in limiting the length of beards. *See* Dkt. 39 at 5. Accordingly, there is no genuine dispute of material fact that FDC has a compelling interest in limiting the length of

beards.

> b. *There is a Genuine Dispute Whether the FDC is Using the Least Restrictive Means to Achieve Its Compelling Interests*

While Defendant has compelling interests, the central issue is whether the FDC has shown there is no genuine dispute that it is using the least restrictive means when denying Plaintiff's request for a fist-length beard. The Court finds there is still a genuine issue of material fact about whether Defendant is using the least restrictive when enforcing its grooming policy against Plaintiff.

Under RLUIPA, once a plaintiff has shown a policy substantially burdens his religious exercise, the burden shifts to the defendant to show that its policy is the least restrictive means of achieving its compelling government interest. *Holt*, 135 S. Ct. at 863; 42 U.S.C. § 2000cc-1(a). Most importantly, the defendant must satisfy this test through the policy's application to the plaintiff's particular circumstances. *See Holt*, 135 S. Ct. at 863; *see also Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017). In assessing the defendant's reasons, the court must consider the harm it will suffer from granting a plaintiff an exemption and "'look to the marginal interest in enforcing' the challenged government action" in the particular context. *Holt*, 135 S. Ct. at 863 (quoting *Hobby Lobby*, 573 U.S. at 726).

Here, Plaintiff claims the FDC could be using other least restrictive means in his particular situation. Plaintiff notes that federal facilities in Florida allow inmates to grow beards longer than half an inch. (Dkt. 39 at 3). Defendant acknowledges that the practices of other jurisdictions are relevant, but they are not controlling. *See* Dkt.

40 at 20 (citing *Knight*, 797 F.3d at 947). While Defendant's point is correct, the fact that other prison systems permit longer beards is both relevant and revealing. For example, in *Procunier v. Martinez*, 416 U.S. 396, 414, n.14, (1974), the Court noted that "[w]hile not necessarily controlling, the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction." *Holt*, 574 U.S. at 368 (quoting *Procunier*). Indeed, the fact that "other prisons allow inmates to grow beards while ensuring prison safety and security suggests that the Department could satisfy its security concerns through a means less restrictive than denying" Plaintiff the ability to grow a fist-length beard. *Holt*, 574 U.S. at 368–69.

On the other hand, Defendant's motion for summary judgment has failed to show that there is no genuine dispute it is using the least restrictive means in Plaintiff's particular situation. *See Holt*, 574 U.S. 362-63 (quoting *Hobby Lobby*, 573 U.S. at 726) (finding there needs to be a "'more focused' inquiry and 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law "*to the person*'' -- the *particular claimant* whose sincere exercise of religion is being substantially burdened'") (emphasis added). Defendant's motion spends a substantial amount of time discussing why the FDC's interests are compelling by highlighting the potential fallout if fist-length beards are allowed in all facilities and across all religious groups. (Dkt. 40 at 6-7). The motion also dedicates several pages to speculating about the financial ramifications if every single member of a designated religious group grew a fist-length beard. (Dkt. 40 at 7-11). However, absent in Defendant's extensive discussion is any *specific reason* as to how the blanket ban on fist

length beards—as applied to Plaintiff's *specific circumstances*—is the least restrictive means to achieve the FDC's interests.

Accordingly, Defendant has not established that he is entitled to summary judgment on the RLUIPA claim because genuine factual disputes remain as to whether the blanket ban on Plaintiff growing a fist-length beard is the least restrictive means of furthering the FDC's compelling interests. However, Plaintiff's motion also fails because he has not supported his motion with Rule 56(c) evidence, such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers."

### III. First Amendment Claim

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). To survive summary judgment, Plaintiff has to establish that Defendant imposed a "substantial burden" on his religious practices. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 565 (1993) ("[o]ur cases have established that [t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice" (internal quotation marks omitted)). Our definition of "substantial burden" is derived from precedents interpreting the Religious Land Use and Institutionalized Persons Act and the Religious Freedom Restoration Act, which "provide greater protection for religious exercise than is available under the First

13

Amendment," *Holt*, 574 U.S. at 356–57. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226–27 (11th Cir. 2004) (discussing precedents of the United States Supreme Court and this Court). Those precedents hold that a substantial burden occurs if the conduct complained of "completely prevents the individual from engaging in religiously mandated activity, or ... requires participation in an activity prohibited by religion" and, at a minimum, must have "something more than an incidental effect on religious exercise." *Id.* at 1227; *see also Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981).

Here, Plaintiff only seeks relief under RLUIPA and presents no argument or factual support for his First Amendment claim. (*See* Dkt. 39). Similarly, Defendant presents no argument beyond a citation that states that if a claim fails under the RLUIPA it necessarily fails under the First Amendment. (*See* Dkt. 40 at 15) (citing *Smith v. Allen*, 502 F.3d 1255, at 1264 n.5 (11th Cir. 2007). As Defendant is not entitled to summary judgment on the RLUIPA claim, the First Amendment claim does not "necessarily fail[]."

## IV. Transfer to Tennessee

Plaintiff seeks two alternate forms of relief: transfer to Tennessee or an exemption from the grooming policy. (Dkt. 11 at 25). To the extent that Plaintiff premises his claim for relief on an entitlement to a transfer to Tennessee, his claim fails as a matter of law. It is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Id*. Defendant is entitled to summary judgment as to Plaintiff's claim seeking a transfer to Tennessee.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the Plaintiff's Motion for Summary Judgment (Dkt. 39) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. 40) is **GRANTED** as to Plaintiff's claim seeking a transfer to Tennessee but otherwise **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on September 18, 2024.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**: Counsel of Record and Pro Se Party